UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v -

OLDAMO FRAZER,

                Defendant.

<u>**OPINION & ORDER**</u>

22-CR-00665 (PMH)

PHILIP M. HALPERN, United States District Judge:

Oldamo Frazer ("Defendant") stands charged in a three-count indictment with possession with intent to distribute cocaine base, cocaine, and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C). (Doc. 1). Before the Court is Defendant's motion to suppress post-arrest statements, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(C). (Doc. 16, "Def. Br."). Defendant filed his motion papers on May 23, 2023 (*Id.*), the Government filed its opposition on June 20, 2023 (Doc. 17, "Gov. Br."), and the motion was fully briefed with the filing of Defendant's reply on July 5, 2023 (Doc. 18, "Reply"). The Court held a status conference on July 27, 2023 and heard argument from the parties on the motion. (*See* July 27, 2023 Min. Entry). Defendant initially requested an evidentiary hearing on the basis that the instant motion raises "several factual disputes." (Reply at 8). Defendant withdrew, during the July 27, 2023 oral argument, the request for an evidentiary hearing and agreed that there was an absence of contested issues of material fact.

Based upon the parties' submissions, the oral argument heard from the parties, and for the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

### I. August 5, 2022 Arrest and Interview

On August 5, 2022, a Town of Poughkeepsie Police Department ("PPD") officer initiated a traffic stop of Oldamo Frazer ("Frazer" or "Defendant") following a traffic infraction. (Doc. 4, "Compl." ¶ 8a). The officer learned that Defendant was driving the vehicle without a valid driver's license and observed him attempting to hide a dark-colored bag. (*Id.*). At the officer's request, Defendant opened the bag, which revealed plastic baggies, a scale with white powdery residue, 22.5 grams of cocaine base, 14.5 grams of cocaine, and 33 grams of fentanyl. (*Id.*). A subsequent search of the vehicle also revealed a firearm holster in the glove compartment. (*Id.*).

Defendant was arrested and brought to the police station, where he waived his *Miranda* rights and consented to an interview. (*Id.* ¶ 8b). The interview was conducted by PPD Detective Nicholas Caparco ("Caparco") and FBI Special Agent Caleb Taylor ("Taylor") of the Hudson Valley Safe Streets Task Force. (Doc. 17-1, "Caparco Aff." ¶ 3). Defendant admitted that the narcotics recovered from the bag were his and described his narcotics distribution business. (*Id.*). Defendant consented to a search of his cellular phone, which contained photographs of packaged narcotics, messages regarding the distribution of narcotics, and photographs and videos of firearms, including a video of the defendant holding a firearm. (*Id.*). Defendant was charged in state court with, *inter alia*, two felony narcotics counts. (*Id.*). Defendant was released on bail on the same date. (*Id.* ¶ 9a).

### II. October 13, 2022 Arrest and Interview

Thereafter and from September 2022 through October 2022, the Dutchess County Drug Task Force made multiple controlled purchases of narcotics from Defendant as part of an investigation into narcotics distribution in Dutchess County. (Compl. ¶ 9a). Based in part on these controlled purchases, on October 11, 2022, the Dutchess County District Attorney's Office

obtained a search warrant from the City of Poughkeepsie Court to search Defendant's residence. (Compl. ¶ 9b). On October 13, 2022, law enforcement personnel executed the search warrant of Defendant's residence. (*Id.* ¶ 9c). Law enforcement recovered from the residence approximately 131 grams of cocaine base, approximately 60 grams of cocaine, and approximately 21 grams of fentanyl. (*Id.*). An additional approximately 17.5 grams of cocaine was recovered from a bedroom dresser. (*Id.*). Law enforcement also found firearm ammunition and scales, and large amounts of cash throughout the residence. (*Id.*; *see also* Caparco Aff. ¶ 5, Ex. 1).

The same day, October 13, 2022, Defendant was arrested and transported to the Dutchess County Sheriff's Office. (Compl. ¶ 9d). Defendant, upon entering the interview room, laid his head down on the desk and wrapped himself in a blanket. (Def. Br., Ex. A at 00:24-00:42). Caparco and Taylor entered the room approximately four minutes later and began the interview. (*Id.* at 04:24). One agent read Defendant his *Miranda* rights shortly after entering the room—the reading took approximately 20 seconds—and asked Defendant if he was willing to answer questions without his lawyer present. (*Id.* at 05:07-05:46). Defendant shrugged in response to the question. (*Id.* at 05:47-05:51). The agents asked Defendant a number of questions about his personal life—including questions about his marriage and immigration status—before handing him a *Miranda* waiver form, which Defendant signed. (*Id.* at 05:52-07:27; Caparco Aff., Ex. 2).

Defendant then spoke with Caparco and Taylor for nearly an hour, during which time he admitted that the narcotics found in his residence were in fact his, and were intended for both distribution and personal use. (Def. Br., Ex. A at 07:49-53:48). Defendant told Caparco and Taylor that he was "dope sick" three times during his interview: first, twenty minutes into the interview, Defendant stated "I get dope sick now" (*id.* at 20:40-20:43); second, approximately 15 minutes later, an agent asked if Defendant wanted water and Defendant responded "I'm getting

dope sick" (*id.* at 34:36-34:56); third, one agent asked at the end of the interview, "are you dope sick or sick," and Defendant responded "dope sick" (*id.* at 51:43-51:45).

## ANALYSIS

Defendant argues that the post-arrest statements made during the October 13, 2022 interview should be suppressed for two reasons. First, because law enforcement did not effectively convey to Defendant his *Miranda* rights. (Def. Br. at 7-9). Second, because even if they did, Defendant was suffering from drug withdrawals such that his waiver and admissions could not be voluntary. (*Id.* at 9-12). The Court addresses each argument *seriatim*.

### I.   Effectiveness of *Miranda* Warning

Defendant argues that the *Miranda* warning given at the beginning of the Ocotber 13, 2022 post-arrest interview was ineffective because "[t]he agents did not give Mr. Frazer time to read his rights and make an informed decision about whether to waive them." (Def. Br. at 7). Caparco and Taylor spent approximately 20 seconds reading Defendant his *Miranda* rights, and then asked him to sign a waiver form, which Defendant signed. The court in *United States v. Green*, in holding that a 10-second *Miranda* recitation was effective, reasoned that "[n]otwithstanding the hurried fashion in which defendant's *Miranda* rights were administered, there is no claim that the rights read to defendant were incomplete, and there is nothing before me to suggest that they were not understood by defendant." *United States v. Green*, No. 20-CR-00110, 2021 WL 2367047, at *3 (W.D.N.Y. Mar. 31, 2021). The same is true here. Defendant does not argue—nor is there any indication from the video of the October 13, 2022 interview— that Defendant did not understand the *Miranda* rights that were read to him. Defendant's signing of the *Miranda* waiver form instead indicates he understood the *Miranda* warning and wished to proceed with the interview.

4

Accordingly, the Court holds that the *Miranda* warning recited to Defendant during the October 13, 2022 post-arrest interview was effectively conveyed.

II.  <u>Knowing and Voluntary *Miranda* Waiver and Post-Arrest Statements</u>

Defendant next argues that he "did not knowingly and voluntarily waive his Miranda rights and his statements were involuntary." (Def. Br. at 9). Waivers are considered "voluntary" when they are "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (*Miranda* waiver valid where defendant's "ability to understand his Fifth Amendment rights and forgo them voluntarily was not impeded by his addiction to GHB"). Equally clear is that a waiver is considered "knowing" when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Courts assessing whether statements are admissible must consider "the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014). Defendant contends that his *Miranda* waiver and subsequent statements were not knowing or voluntary because he was "[s]uffering from severe drug withdrawals prevented [him] from thinking clearly, making his brain foggy, his thoughts confused, and him disoriented." (Def. Br. at 11). This argument was squarely rejected in *United States v. Feola*, where the court held that "a confession offered under the pangs of heroin withdrawal, in the absence of coercive police activity, is not involuntary for *Miranda* purposes." 651 F. Supp. 1068, 1119 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989).

The video of the October 13, 2022 interview shows that Defendant was "was sufficiently alert, responsive, and cogent" throughout the interview, and responded to nearly all of the questions asked by Caparco and Taylor over the course of the one-hour interview. *United States*

*v. Harris*, No. 14-CR-00177, 2017 WL 7050012, at *8 (W.D.N.Y. Aug. 29, 2017) (holding that a defendant's *Miranda* waiver and post-arrest statements were knowing and voluntary despite the defendant claiming to be "dope sick" during the interview). Defendant did not request medical assistance at any point during the interview, nor did he make any attempt to stop the interview.[1] There is no indication that Caparco or Taylor engaged in any "coercive police activity"—which is "a necessary predicate to the finding that a confession is not 'voluntary'"—during the course of the interview. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). The interview proceeded in "in a conversational tone without [D]efendant demonstrating any hesitation about speaking with [Caparco or Taylor] or giving any indication that he wished to invoke his right to remain silent." *Id.* Defendant's characterization that he was "foggy", "confused", and "disoriented" during the interview is plainly contradicted by the video evidence. Defendant was able to recall—down to the gram—the precise amounts of each type of narcotic that he had stored in his safe. (Def. Br., Ex. A at 14:21-17:43). He was able to provide details on where he obtained the narcotics (*id.* 17:56-19:05), as well as details on the sale of the narcotics such as how long it would take for him to sell the contents of his safe and the prices he charged (*id.* at 19:06-25:42). Defendant's responses were not limited to one or two words, but instead he provided a fulsome and detailed account of his narcotics trafficking operation. "Defendant's claims of discomfort do not overcome the video evidence showing that he was read his *Miranda* rights, understood them, and chose to relinquish them without any coercion." *United States v. McCollum*, No. 21-CR-00733,

---

[1] Approximately 52 minutes into the interview, one of the agents stated that they would be taking Defendant to the hospital. (*Id.* at 52:27). Defense counsel made much of this statement during oral argument, and the Government responded that it was standard procedure for law enforcement to take any defendant complaining of a medical condition to the hospital for evaluation prior to processing. Given the clarity of the one-hour video and the demeanor of the Defendant during the entire hour, whether Defendant was taken to the hospital following his post-arrest interview is not relevant to the question of whether his *Miranda* waiver and post-arrest statements were knowing and voluntary. In any event, the Court considers law enforcement's statement that they would take Defendant to the hospital along with the balance of Defendant's statements as a part of "the totality of circumstances" surrounding Defendant's *Miranda* waiver and post-arrest statements. *Taylor*, 745 F.3d at 23.

2022 WL 4622620, at *4 (S.D.N.Y. Sept. 30, 2022). The video evidence shows that Defendant's waiver of his *Miranda* rights and subsequent statements were "the product of free and deliberate choice rathern than intimation, coercion, or deception." *O'Brien*, 9926 F.3d at 73. Defendant's signing of the waiver form and subsequent responses to the agents' questions additionally shows that the *Miranda* waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

Accordingly, the Court holds that Defendant's waiver of his *Miranda* rights and his post-arrest statements—when considering the totality of the circumstances as the Court must—were both knowing and voluntary.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress his post-arrest statements is DENIED.

As noted during the July 27, 2023 conference, time has been excluded under the Speedy Trial Act through the date of the final pretrial conference, which is scheduled for September 5, 2023 at 2:30 p.m. in Courtroom 520.

**SO ORDERED.**

Dated: White Plains, New York
       July 27, 2023

_____
Philip M. Halpern
United States District Judge